IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| DE'RON DE'VAUGHN MAHONE, | * | |
| Plaintiff, | * | |
| vs. | * | CASE NO. 4:19-CV-117 (CDL) |
| STATE OF GEORGIA, *et al.*, | * | |
| Defendants. | * | |

O R D E R

The United States Magistrate Judge issued a Report and Recommendation recommending that all of Plaintiff's claims except his § 1983 malicious prosecution claim against Officer Zachery Stewart in his individual capacity be dismissed (ECF No. 33). Officer Stewart filed an objection to the Magistrate Judge's recommendation that he was not entitled to qualified immunity on the malicious prosecution claim. The Court therefore reviews that recommendation de novo. Because there has been no objection to the Magistrate Judge's recommendation that the other claims be dismissed, that recommendation is reviewed for clear error.

Based upon a de novo review of the record in this case, the Court finds that Officer Stewart is entitled to qualified immunity on the malicious prosecution claim, and therefore, that claim is dismissed for the reasons explained in the remainder of this Order. The Court finds no clear error as to the Magistrate Judge's

recommendation that all of the other claims be dismissed, and that recommendation is accepted and adopted by the Court. Accordingly, this action is hereby dismissed in its entirety.

## DISCUSSION

On June 12, 2015, Plaintiff entered his pregnant ex-girlfriend's apartment, picked up a clothes iron from inside her apartment, and hit her multiple times with it while stating that he was going to kill her. After investigating the incident, Zachery Stewart, a Columbus Police Department officer, sought and was issued three warrants to arrest Plaintiff for felony home invasion, felony aggravated assault, and misdemeanor assault of an unborn child. A jury found Plaintiff guilty on all three charges. On appeal, the Georgia Court of Appeals affirmed the aggravated assault and assault of an unborn child convictions but reversed the conviction on the home invasion charge. On an issue of first impression, the Court of Appeals held that, because Plaintiff picked up the weapon inside the victim's apartment and did not bring it with him, his conduct was not covered under the home invasion statute.

Although Plaintiff's felony aggravated assault and assault of an unborn child convictions for viciously beating his pregnant ex-girlfriend with an iron were affirmed, Plaintiff, proceeding *pro se*, had the audacity to sue Officer Stewart and various other state and municipal defendants for malicious prosecution under 42 U.S.C.

§ 1983, because they, along with two trained and seasoned judges, misinterpreted the home invasion statute. Defendants moved to dismiss Plaintiff's claims, asserting a number of defenses including qualified immunity (ECF Nos. 18 & 28). The Magistrate Judge's dismissal of many of the claims in this action is well reasoned, and the Court accepts that part of his recommendation, making it part of the Order of this Court. The only issue that requires further discussion is the malicious prosecution claim against Officer Stewart in his individual capacity, which the Magistrate Judge recommended should remain pending for further proceedings.

Contrary to the Magistrate Judge's conclusion, the undersigned determines that Officer Stewart is entitled to qualified immunity here.[1] "Qualified immunity is total immunity from suit[.]" *Manners v. Cannella*, 891 F.3d 959, 967 (11th Cir. 2018). This "immunity allows government officials to 'carry out their discretionary duties without the fear of personal liability or harassing litigation.'" *Id.* (quoting *Oliver v. Fiorino*, 586 F.3d 898, 904 (11th Cir. 2009)). To be entitled to qualified immunity, an "officer first must establish that [he was] acting within [his] discretionary authority during the incident." *Id.*

---

[1] The Court observes that the basis for the Court's decision today was not persuasively argued before the Magistrate Judge by Officer Stewart's counsel, which likely contributed to the Magistrate Judge's recommendation to deny qualified immunity to Officer Stewart.

3

Here, there is no dispute that Officer Stewart acted within his discretionary authority when he pursued a warrant to arrest Plaintiff on the home invasion charge. "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.* at 968 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).

"The qualified immunity inquiry articulated by the Supreme Court provides immunity for law enforcement officers 'unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."'" *Id.* (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)). "'Clearly established' means that, at the time of the officer's conduct, the law was '"sufficiently clear" that every "reasonable official would understand that what he is doing"' is unlawful." *Wesby*, 138 S. Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To determine whether a right is clearly established, the Court may look to law decided by the Supreme Court, the Eleventh Circuit, or the Supreme Court of Georgia. *Leslie v. Hancock Cty. Bd. of Educ.*, 720 F.3d 1338, 1345 (11th Cir. 2013).

An officer can be liable under § 1983 for malicious prosecution when his "request for a warrant allegedly caused an unconstitutional arrest." *Malley v. Briggs*, 475 U.S. 335, 344

4

(1986). Here, Plaintiff alleges that Officer Stewart's request for the home invasion arrest warrant caused Plaintiff to be arrested without probable cause in violation of the Fourth Amendment. To succeed on this claim, Plaintiff must show that "a reasonably well-trained officer . . . would have known that his affidavit [supporting the arrest warrant] failed to establish probable cause and that he should not have applied for the warrant." *Id.* at 345. "[T]he existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). "'Probable cause' is defined as 'facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense.'" *Id*. at 1257 (quoting *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).

"To receive qualified immunity, an officer need not have actual probable cause, but only 'arguable' probable cause." *Id*. "Arguable probable cause exists where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Id*. (quoting *Kingsland v. City of Miami,* 382 F.3d 1220, 1232 (11th Cir. 2004)). "Indeed, it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and in such cases those officials should not be held personally liable." *Id*.

5

(quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). "The standard is an objective one and does not include an inquiry into the officer's subjective intent or beliefs." *Id*. "Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Id*.

The record is clear that Officer Stewart had probable cause to support his application for an arrest warrant based upon Plaintiff's beating of his pregnant ex-girlfriend with an iron. This beating clearly supported the charges for felony aggravated assault and misdemeanor assault of an unborn child. The record also establishes that Officer Stewart accurately represented the facts to the trial judge who issued the warrant. That trial judge had the same information as Officer Stewart when he signed the warrants. As it turned out, those facts did not support a charge for home invasion under the recently enacted Georgia statute as interpreted by the Georgia Court of Appeals in this case of first impression. Ignoring that he was validly arrested (and subsequently convicted) on the other two charges, Plaintiff nevertheless seeks money damages from Officer Stewart because Officer Stewart indicated in his application for the warrant that based on the facts stated in the warrant application, which were fully known to the issuing judge, he believed Plaintiff had also committed the offense of home invasion.

6

The Court assumes for purposes of this Order that Officer Stewart did in fact know when he sought the home invasion arrest warrant that Plaintiff did not possess the iron when he entered the apartment. The first question therefore is whether, knowing this fact, every reasonable police officer under these circumstances would know that no probable cause existed to pursue an arrest warrant based upon a violation of the Georgia home invasion statute.

When Officer Stewart applied for the arrest warrant, the ink on the statute codifying the crime of home invasion had barely dried, with the statute having been enacted less than a year before. No published case law existed explaining the elements of the crime. The Court acknowledges that the Georgia Court of Appeals in Plaintiff's criminal appeal described the statute as unambiguous for statutory interpretation purposes. Some could argue that if the statute was unambiguous to the Court of Appeals, it necessarily was unambiguous to everyone else in the world, including Officer Stewart and every other reasonable police officer. This leap of logic, however, mistakenly equates lack of ambiguity as interpreted by experienced appellate judges for statutory interpretation purposes with a reasonable understanding by police officers. The Court certainly does not quarrel with the general proposition that if the language of the home invasion statute was "clear and compelling" that the weapon had to be

7

brought into the house from outside, then perhaps "*no* reasonable officer could have thought there was probable cause to effect an arrest under the circumstances." *Poulakis v. Rogers*, 341 F. App'x 523, 529 (11th Cir. 2009) (analyzing the language of Florida statutes where no controlling case law addressed the relevant issue within the statutes). But that is not the case here. As evidenced by the complexity of the statute and the interpretation of it by two other judges consistent with Officer Stewart's interpretation, the Court cannot conclude that every reasonable law enforcement officer would have concluded that, under the circumstances presented to Officer Stewart at the time he applied for the warrant, he did not have arguable probable cause.

The statute states, "[a] person commits the offense of home invasion in the first degree when, without authority and with intent to commit a forcible felony therein and while in possession of a deadly weapon or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury, he or she enters the dwelling house of another while such dwelling house is occupied by any person with authority to be present therein." O.C.G.A. § 16-7-5(b). It took the legislature 76 words, four commas, and several complex phrases to describe this relatively simple offense. Two well trained and experienced judges in the underlying criminal case interpreted this language as Officer Stewart did—possession of a weapon prior to entrance

8

into the apartment was not an essential element of felony home invasion. The judge issuing the arrest warrant decided to issue the warrant even though Officer Stewart indicated in his affidavit that Plaintiff did not possess the iron at the time he entered the apartment. *See* Municipal Defs. & Officers' Mem. in Support of Mot. to Dismiss Ex. A, Home Invasion Warrant, ECF No. 28-1 at 14 (noting Officer Stewart stated under oath that Plaintiff "did unlawfully entered [sic] 500 5th Ave. 411 C with the intent to murder victim Shenearia Willis. He *then* picked up a clothes iron striking the victim in the face multiple times" (emphasis added)). Therefore, it appears that judge did not believe the home invasion statute required this element.

Subsequently, the trial judge rejected Plaintiff's argument that the home invasion charge should be dismissed because the State failed to prove he possessed the iron at the time he entered the apartment. *See Mahone v. State*, 823 S.E.2d 813, 815 (Ga. Ct. App. 2019) (explaining what occurred in the trial court). The trial judge reasoned that, "because [Plaintiff] broke into the apartment for the purpose of assaulting [his ex-girlfriend], his entry was not complete until he located [her] in the apartment's bedroom and began the assault." *Id*. When Plaintiff appealed this decision, the State argued that the trial judge's decision was supported by the statutory definition of "dwelling" found in O.C.G.A. § 16-7-5. *Id*. at 816. The term "dwelling" is defined as "any building,

9

structure, or portion thereof which is designed or intended for occupancy for residential use." *Id.* (quoting O.C.G.A. § 16-7-1(a)(1)). The State reasoned that, given the phrase "a portion thereof," an illegal entry for purposes of the home invasion statute occurs any time a separate portion of the dwelling is entered. *Id.* And, here, "assuming [Plaintiff] located the iron after he entered the apartment but before he entered the bedroom in which [his ex-girlfriend] was located, he committed home invasion when he entered the bedroom in possession of the iron." *Id.* (footnote omitted).

The two judges' interpretation turned out to be wrong according to the Georgia Court of Appeals, which reversed the trial judge's decision and rejected this interpretation of "dwelling." Although the Court of Appeals's opinion indicated that the statute was unambiguous, they did not reverse the conviction summarily. Instead, they engaged in the type of sophisticated legal reasoning one would expect from an appellate court with the luxury of being able to fully consider the statute in the calm of their judicial chambers. They explained that (1) the "portion thereof" language in the statute "does not refer to portions of the dwelling"; "[i]nstead, it refers to that part of a building or structure in which a residence is located," *id.*; (2) "in cases applying the burglary statute," which relies on the same definition of "dwelling," "this Court has made clear that an unlawful entry into

10

a dwelling house is complete once the perpetrator 'breaks the plane of the structure . . . with the intent to commit a felony therein,'" *id.* (quoting *Meadows v. State*, 590 S.E.2d 173, 178 (Ga. Ct. App. 2003)); and (3) the burglary statute covers situations where an individual enters a dwelling without a weapon and so interpreting the home invasion to do the same would render the burglary statute meaningless in violation of rules of statutory construction, *id.* at 817.

Although not dispositive, it is telling that two judges believed that the language of the home invasion statute did not require possession of a weapon upon entry into the apartment. Yet, Plaintiff argues that the law was so clearly established that every reasonable police officer would know that it did. The Eleventh Circuit's analysis in *Barts v. Joyner*, 865 F.2d 1187 (11th Cir. 1989) is instructive in this situation. In *Barts*, the plaintiff brought a § 1983 action against officers for unlawful seizure in violation of the Fourth Amendment. *Id.* at 1189. But, in the underlying criminal case, a state trial judge found that the seizure was not unconstitutional and denied the plaintiff's motion to suppress on that basis. *Id.* at 1193. The Eleventh Circuit recognized that the state trial judge's ruling did "not control [its] decision here," but it reasoned that "on the issue of whether the pertinent [Fourth Amendment] law was clearly established, the opinion and decision of the state court do count." *Id.* It reasoned

11

that courts "cannot realistically expect that reasonable police officers know more than reasonable judges about the law." *Id*. And it therefore found that, "[e]ven if the state trial judge in [the plaintiff's] criminal case was mistaken in denying the motion to suppress, if that judge's opinion about the fourth amendment's application to the events was within the range of professional competence (that is, was not an unacceptable error indicating 'gross incompetence or neglect of duty'), the police officer defendants ought not to be held liable." *Id*. at 1193-94; *see also Malley*, 475 U.S. at 346 n.9 ("[I]t goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable."). "To say the least, when a state court judge upholds the constitutionality of police actions, that alerts [the court] to be particularly careful in concluding that the law was truly clearly established before [it] permit[s] the officers to be held civilly liable." *Barts*, 865 F.2d at 1194.

Here, two reasonable judges read the newly-enacted home invasion statute and concluded Plaintiff violated the statute even though he did not possess the clothes iron when he first entered the apartment. Ultimately, they were mistaken. The Georgia Court of Appeals found that, for statutory interpretation purposes, the "plain and unambiguous language" of the statute required

12

possession of a weapon at the time of entry into the apartment. But, in coming to that conclusion and rejecting the trial court's reasoning, the Georgia Court of Appeals had to analogize to cases interpreting Georgia's burglary statute and rely on canons of statutory interpretation. The amount of ink spilled in discrediting the trial court's interpretation of the statute suggests that the language of the home invasion statute was not "so clear and compelling" that possession of a weapon upon entry into the apartment was an essential element "that *no* reasonable officer could have thought there was probable cause to effect an arrest" here. *Poulakis*, 341 F. App'x at 529. Officers are not expected to know more about the law than reasonable jurists. *See United States v. Taxacher*, 902 F.2d 867, 872 (11th Cir. 1990) ("[B]ecause a reasonable jurist has more legal training than a reasonably well-trained officer, what would be reasonable for a well-trained officer is not necessarily the same as what would be reasonable for a jurist."); *Malley*, 475 U.S. at 346 n.9 ("It is a sound presumption that 'the magistrate is more qualified than the police officer to make a probable cause determination.'"). And, the statutory interpretation conducted by the judge who issued the arrest warrant and the trial court judge in this case were "within the range of their professional competence" as jurists and did not indicate "gross incompetence or neglect of duty." *Barts*, 865 F.2d at 1193-94. Although incorrect, their reading of the home invasion

statute was reasonable. Accordingly, a reasonable officer without the advanced legal training of the judges here could also read the home invasion statute and believe that it applied to the facts of this case even though Plaintiff did not possess a weapon at the time he first entered the apartment. Therefore, Officer Stewart had arguable probable cause to seek an arrest warrant for home invasion against Plaintiff, and he is entitled to qualified immunity on Plaintiff's § 1983 malicious prosecution claim.[2]

## CONCLUSION

For these reasons, the Court finds that Officer Stewart is entitled to qualified immunity on Plaintiff's malicious

---

[2] In his objection to the Magistrate Judge's Report and Recommendation, Officer Stewart's counsel argued that because Plaintiff was convicted on the aggravated assault and assault of an unborn child charges, the criminal proceeding did not terminate in his favor, and therefore, he failed to establish an essential element of his § 1983 malicious prosecution claim. An argument could be made that the law is unsettled as to whether a malicious prosecution claim can be maintained when a defendant obtains only a partial victory at a trial that is based on multiple charges arising out of the same set of circumstances. *See Uboh v. Reno*, 141 F.3d 1000, 1005 n.8 (11th Cir. 1998) (leaving open the question of "whether . . . dismissal of charges that . . . arise out of the same set of circumstances as the charges for which a defendant was convicted might constitute termination in favor of the accused" and could therefore support a malicious prosecution claim). And if the law is unsettled, then qualified immunity may be appropriate. Similarly, an argument could be made that it is unclear whether a violation of the Fourth Amendment even occurs when the person was simultaneously arrested on other legitimate charges arising from the same set of circumstances. The Court recognizes that a panel of the Eleventh Circuit suggested in an unpublished opinion that for arrests pursuant to a warrant, unlike with warrantless arrests, "probable cause as to one charge will not bar a . . . claim based on a second, distinct charge as to which probable cause was lacking." *Elmore v. Fulton Cty. Sch. Dist.*, 605 F. App'x 906, 915 (11th Cir. 2015) (per curiam) (quoting *Holmes v. Vill. of Hoffman Estates,* 511 F.3d 673, 682 (7th Cir. 2007)). But unpublished opinions do not constitute clearly established law for purposes of qualified immunity. And Plaintiff did not identify and the Court could not find any binding cases from the Supreme Court, Eleventh Circuit, or Georgia Supreme Court clearly establishing this rule. Because the Court finds that Officer Stewart is otherwise entitled to qualified immunity, it need not reach these arguments.

14

prosecution claim and that claim is therefore dismissed. The Court accepts the Magistrate Judge's recommendation that all of the other claims be dismissed for the reasons explained by the Magistrate Judge in his recommendation. Accordingly, this action is dismissed in its entirety.

IT IS SO ORDERED, this 22nd day of June, 2020.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA